**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| CLEVELAND GREENWOOD,<br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES STEEL CORP. and<br>UNITED STEELWORKERS OF AMERICA,<br>    Defendants. | )<br>)<br>)<br>)   CAUSE NO.:2:08-CV-32-PRC<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment of United States Steel Corporation [DE 28], filed by Defendant United States Steel Corporation (hereinafter "Defendant") on May 3, 2010. Plaintiff filed his response brief on July 20, 2010, to which Defendant filed its reply on August 20, 2010.

## PROCEDURAL BACKGROUND

On January 31, 2008, Plaintiff filed a Complaint against Defendant and the United Steelworkers of America ("the Union"), alleging, in relevant part, race discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), as well as claims under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Employee Retirement Income Security Act ("ERISA"), and a claim for Intentional Infliction of Emotional Distress ("IIED"). Defendant filed its Answer on April 21, 2008.

On May 3, 2010, Defendant filed its Motion for Summary Judgment with a brief in support. Plaintiff filed a response brief in opposition to the Motion for Summary Judgment on July 20, 2010, to which Defendant filed a reply brief on August 20, 2010.

On July 21, 2010, the Court issued an Order [DE 45] approving and granting the parties' Stipulation to Partial Voluntary Dismissal of Plaintiff's ADA, FMLA, ERISA, and IIED claims. Accordingly, only the § 1981 and Title VII claims remain before this Court.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The

moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor

of that party.  *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## MATERIAL FACTS

Plaintiff began working in Defendant's Gary, Indiana, plant in 1977.  In approximately 1992, Plaintiff transferred to the Hot Strip Mill in the Hot Rolling Division, where Plaintiff was a Labor Grade 2 Utility Technician working as a burner in the Slab Handling and Processing Department. During the relevant time period, the Hot Strip Mill's Area Manager was Jim Dudek, the Coordinator was Sherry Balakir, and the Shift Managers were Robert Pavlik and Ron Heminger.

Plaintiff was given a written warning and one-day suspension for failing to perform assigned work on October 15, 2005, and a three-day suspension for failing to perform assigned work on October 23, 2005. On December 22, 2005, Plaintiff submitted a grievance alleging that Mr. Heminger was harassing him, discriminating against him, creating a hostile work environment, making threats to fire him or remove him from breaking in on the stocker shipper position and not permitting him the right to bump younger employees to move to a scarfer position, all of which he claimed to be racially motivated.

Defendant allowed Plaintiff to train for the scarfer position, but did not allow him to "bump" other employees out of their existing jobs to permit Plaintiff to obtain a scarfer position.  On February 15, 2006, Plaintiff filed another grievance regarding Defendant's refusal to allow him to work as a scarfer, alleging that management was discriminating against him when it told the union

4

that he could not "bump" a less senior employee from the scarfer position after he completed the training. However, unlike the December 22, 2005 grievance, Plaintiff did not specify the basis for the alleged discrimination.

On April 6, 2006, Plaintiff was moved back to his burner position with Ms. Balakir alleging that because of high inventory levels, more burners were needed to increase production.

Defendant's Basic Labor Agreement ("BLA") with the Union contains a series of provisions regarding employee rights for a safe work environment, non-discrimination, and for the creation of a Joint Committee on Civil Rights to review Union member complaints of discrimination. Defendant also issued a general policy prohibiting discriminatory conduct based on a protected class and prohibiting any retaliatory conduct against an employee who has submitted a good faith complaint of discrimination.

Under the BLA's terms, any employee receiving a suspension would be entitled to Justice & Dignity, entitling the employee to remain working pending the final disposition of his or her grievance of the discipline. For a five-day suspension subject to discharge, an employee was entitled to a pre-suspension hearing ("9B Hearing") attended by management, union officials, and Defendant's Labor Relations organization. The 9B Hearing was an opportunity for Labor Relations to gather information from all of the parties and determine the facts. The decision on whether to uphold, reduce, or revoke the suspension issued by management, and to possibly discharge the employee if warranted based on the information presented at the hearing, was to be made in conjunction by Labor Relations and management in a separate meeting following the employee's 9B Hearing. The shift manager, coordinator, and/or area manager did not have the discretion to discharge an employee, but were able to provide input on the decision.

Due to a significant increase in customer demand, Defendant conducted a meeting on April 27, 2006, during which it informed the burners, including Plaintiff, that the number of slabs that they had to cut during an eight-hour shift had been increased from eight to twelve. There was no grace period before the start of the new requirement and on April 29, 2006, during the first shift of the new production requirement, Plaintiff failed to cut the required twelve slabs. As a result, he received a five-day suspension that was later converted to a discharge on June 27, 2006. Plaintiff filed a grievance over this discipline and his grievance was sustained in arbitration on May 30, 2007, with the Board of Arbitration finding that the discipline was inappropriate. He was allowed to continue to work while his grievance was pending.

On May 1 and 2, 2006, Plaintiff met the production requirements. However, on May 3, 2006, Plaintiff claims that the shipper who issued the slab instructions to him was forty five minutes late in issuing the instructions and Plaintiff eventually was only able to cut ten slabs during his shift, needing an additional fifteen minutes of overtime to cut the remaining two. On the morning of May 3, 2006, Mr. Pavlik contacted Ms. Balakir to express his concern that Plaintiff arrived late and that the shipper working with him had complained of his late arrival. Mr. Pavlik asked Ms. Balakir to come to the burning and slitting area to observe Plaintiff work. Ms. Balakir then observed Plaintiff and video recorded his movements, revealing that Plaintiff failed to cut four slabs at a time, took repeated breaks, left his work station for extended periods of time, allegedly distracted other workers in his area, and this resulted in his inability to meet the production requirement during his shift, leading Ms. Balakir to conclude that he was deliberately wasting time. Plaintiff was the only employee who was videotaped. As a result of his failure to meet the production requirements, Plaintiff received another five-day suspension, which was converted to a discharge on June 27, 2006.

Other burners who did not meet the production requirement during this period of time were also disciplined, but were not discharged.

At Plaintiff's June 27, 2006, 9B Hearing regarding the May 3, 2006 incident, Plaintiff claimed that he was delayed because of the shipper's delay and he needed to review the Standard Job Procedure Manual[1]. At her March 3, 2010 deposition, Ms. Balakir admitted that she did not investigate Plaintiff's claim of shipper error before the 9B Hearing. At his March 3, 2010 deposition, Mr. Dudek testified that a discipline would not be issued if there was a problem that made it impossible to get the work done. After the 9B Hearing, Plaintiff's suspension was converted to a discharge.

Plaintiff grieved his discharge, but the Board of Arbitration found that Defendant had proper cause to discharge him for failing to complete his work on May 3, 2006.

Brian Junkens, a Caucasian burner, received three notices of discipline and a three day suspension for his failure to meet the production requirements on May 1, 2, and 3, 2006.[2] Mr. Dudek testified at his March 3, 2010 deposition that Mr. Junkens had a prior disciplinary record for not burning the required amount of slabs. Nonetheless, he was not terminated for his failure to meet the production requirements in May 2006.

On June 25, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") naming the Union as the respondent. In the Charge, Plaintiff

---

[1] Defendant issued this manual to employees to advise as to the exact procedures it wanted followed for cutting slabs.

[2] In his statement of Genuine Issues of Material Fact, Plaintiff represents that Mr. Junkens informed Mr. Pavlik that he was intentionally failing to meet the production requirement. However, the deposition testimony that Plaintiff cites does not support this assertion and Plaintiff has failed to provide any other evidence supporting that Mr. Junkens was intentionally failing to meet the production requirement.

alleged that he was discriminated against on the basis of his disability in violation of the ADA. The EEOC issued Plaintiff a right to sue letter on October 31, 2007.

## ANALYSIS

In support of its Motion for Summary Judgment, Defendant contends that Plaintiff's Title VII claims are untimely as they were not included in his EEOC charge and Plaintiff cannot prove a prima facie case of race discrimination or retaliation under § 1981. The Court evaluates each argument in turn.

### A. Timeliness of Plaintiff's Title VII Claims

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The purpose of this requirement is to promote the resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them. *Id.* at 500.

"In order to further the goals of Title VII and given the fact that laypersons rather than lawyers usually are the ones initiating these charges, 'a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.'" *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (quoting *Cheek*, 31 F.3d at 500). Further, Title VII plaintiffs can litigate claims not explicitly included in the EEOC charge if the allegations fall within the scope of the plaintiff's allegations contained in the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In determining whether the allegations in the complaint fall within the scope of the EEOC charge, the Court considers whether they are "like or reasonably related to" those contained in the EEOC charge. *Id.* This is a liberal standard that is satisfied if there is a

reasonable relationship between the allegations in the charge and those in the complaint, and the claims in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692.

Here, Defendant argues that Plaintiff's EEOC Charge only alleges that the Union violated the ADA and, therefore, does not name Defendant United States Steel in the Charge and does not include allegations of race discrimination or retaliation, thereby providing notice to Defendant, opportunity for Defendant to respond, or provide the EEOC with an opportunity to investigate these claims. Assuming for the sake of argument that the Plaintiff's allegations properly put Defendant on notice of the allegations in the EEOC Charge, after reviewing Plaintiff's Complaint and the EEOC Charge, the Court concludes that Plaintiff's Title VII claims are not reasonably related to the claims raised in his EEOC Charge.

In the June 25, 2007 EEOC Charge, Plaintiff failed to check the boxes for race and retaliation. Further, in the narrative section of the Charge, Plaintiff failed to include any allegation of race discrimination or retaliation, instead focusing on alleged disability discrimination under the ADA. Accordingly, Plaintiff's allegations of race discrimination and retaliation under Title VII are not like or reasonably related to his disability discrimination allegations contained in his EEOC Charge. Therefore, there is no reasonable relationship between the allegations in the Plaintiff's EEOC Charge and those in his Complaint, and the Title VII claims cannot be reasonably expected to have been discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692; *see also Ujoh v. Potter*, No. 09-cv-343-JPG, 2009 WL 4800207, at *3 (S.D. Ill. Dec. 10, 2009) (finding that Title VII claims were not reasonably related to claims of physical disability where the plaintiff failed to check the boxes on the charge regarding discrimination or provide a factual basis upon which to

draw a relationship between the types of discrimination alleged); *Baker v. Indiana Family & Social Services Admin.*, 260 F. Supp. 2d 731, 735 (S.D. Ind. 2003) (finding that claims were not like or reasonably related where they alleged different conduct, plaintiff failed to check the applicable box on the Charge, and did not include the alleged discrimination in the narrative section of his Charge).

In his response brief, Plaintiff fails to address Defendant's arguments that the Title VII claims were not properly alleged in the EEOC Charge, instead focusing on whether the Charge adequately put Defendant on notice that it was the respondent in this case. "An underdeveloped argument, or argument not raised at all, is a waived argument." *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137-AS, 2008 WL 45357, at *2 (N.D. Ind. Jan. 2, 2008). Therefore, Plaintiff fails to raise a genuine issue of material fact as to whether his Title VII claims are like or reasonably related to the allegations in his EEOC Charge.

Plaintiff also alleges that he relied on the EEOC intake coordinator to prepare his Charge after explaining the circumstances to her and Plaintiff was allegedly assured that the Charge adequately addressed all of Plaintiff's complaints. However, Plaintiff has failed to provide any evidence (such as his intake questionnaire) showing what he told the EEOC intake coordinator who helped him prepare the Charge. Nonetheless, oral communications with an intake officer are insufficient to reserve a claim not contained in the Charge. *Vela v. Village of Sauk Village*, 218 F.3d 661, 664-65 (7th Cir. 2000). Since the alleged oral charge of discrimination and retaliation are not like or reasonably related to the allegations in the written Charge, the Title VII claims are not properly before this Court and summary judgment must be granted in Defendant's favor on Plaintiff's Title VII claims.

## B. Plaintiff's Claims under 42 U.S.C. § 1981

Unlike Title VII, claims brought under § 1981 are not subject to the same procedural requirements and a plaintiff need not file an administrative charge prior to bringing suit. *See Ruiz v. Adecco Employment Services*, IP IP02-1302-C B/S, 2002 WL 31427454, at *1 n. 1 (S.D. Ind. Oct. 25, 2002) (providing that § 1981 actions do not require plaintiffs to file a prior administrative charge); *Jefferson v. City of Chicago*, No. 97 C 4895, 1999 WL 116223, at *2 (N.D. Ill. Feb. 26, 1999) (providing that § 1981 does not impose the same procedural requirements as Title VII). Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Claims under § 1981 are analyzed in the same manner as claims brought under Title VII. *Eiland v. Trinity Hospital*, 150 F.3d 747, 750 (7th Cir. 1998); *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).

### 1. Plaintiff's Race Discrimination Claim

A prima facie case of race discrimination under § 1981 is predicated on the same elements as a race discrimination claim under Title VII. *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 789 (7th Cir. 2001). Under Title VII, a plaintiff may meet his burden of proof by offering direct evidence of the defendant's discriminatory intent or by proving disparate treatment through the indirect method. *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). Under the direct method, a plaintiff can survive summary judgment by showing sufficient direct or circumstantial evidence on which a jury could find that the alleged adverse employment action was taken for a discriminatory reason. *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009). Direct evidence is evidence that proves the particular fact in question without reliance on inference or presumption. *Nichols v.*

*Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Under this method of proof, direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed . . . ." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Plaintiff has failed to allege any facts showing direct evidence of discrimination. Therefore, Plaintiff must proceed under the indirect, burden-shifting method.

Under the indirect method of proof, a plaintiff must show that (1) he is the member of a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably by the employer. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008). If the plaintiff establishes his prima facie case, then the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant offers a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to come forward with evidence showing that the stated reason is pretextual. *Id.* at 804.

Here, Defendant concedes that Plaintiff is a member of a protected class (as an African-American) and that he suffered an adverse employment action by being discharged. Defendant argues that Plaintiff is unable to show that he met Defendant's legitimate expectations or that similarly situated employees outside of the protected class were treated more favorably by the Defendant.

Plaintiff does not dispute that he failed to meet Defendant's twelve slab production requirement on May 3, 2006, but instead argues that he was disciplined more harshly than employees who were outside the protected class and committed the same offense. The Seventh

Circuit Court of Appeals has created a narrow exception excusing plaintiffs from showing that they met their employer's legitimate expectations "when a plaintiff alleges that other employees were also not meeting the employer's expectations but the employer selectively punished the plaintiff, or punished the plaintiff more severely, for discriminatory reasons." *McNair v. Bonaventura*, 46 F. App'x. 849, 852 (7th Cir. 2002) (citing *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001)). In such situations, the legitimate expectations element of Plaintiff's prima facie case dovetails with the issue of pretext. *Curry*, 270 F.3d at 478. Accordingly, Defendant's argument that Plaintiff did not meet its legitimate expectations is more appropriately considered in the pretext analysis. *Id.*

Nonetheless, Plaintiff still must show that similarly situated employees outside of the protected class were treated more favorably. A plaintiff may demonstrate that another employee is similarly situated by showing that the other employee is directly comparable to the plaintiff in all material respects. *Bottoms v. Ill. Dep't of Human Servs.*, 281 F. App'x 561, 564 (7th Cir. 2008). In this context, a similarly situated employee is one who shared the same supervisor, performance standards, and engaged in similar conduct to plaintiff without such differentiating or mitigating circumstances that would "distinguish their conduct or the employer's treatment of them." *Peirick v. Indiana Univ.-Purdue Univ.,* 510 F.3d 681, 688 (7th Cir. 2007); *see Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) (applying the same factors in the § 1981 context).

Here, Plaintiff identifies Mr. Junkens as a comparator and argues that Defendant's inconsistent application of its disciplinary policy raises the inference of racial discrimination. The evidence of record indicates that Plaintiff and Mr. Junkens shared the same position (as burners in the same division), were both subject to the same performance standards (the twelve slab requirement), shared the same supervisors (Mr. Pavlik and Ms. Balakir), and both had disciplinary

backgrounds involving failure to perform work. During the same time period in early May, both Mr. Junkens and Plaintiff received notices of discipline for failure to meet the production requirement, yet Plaintiff was terminated while Mr. Junkens was not. While the evidence also indicates that on May 3, 2006, Plaintiff was performing his work slowly, as captured on video, there is no evidence that Defendant used this as a basis for termination, rather, only identifying Plaintiff's failure to perform his work, and is not a basis used to distinguish between Plaintiff's and Mr. Junkens' conduct.[3] Accordingly, since Plaintiff and Mr. Junkens engaged in similar conduct and had a prior disciplinary record involving failure to perform work, the evidence supports that a genuine issue of material fact exists as to whether similarly situated employees outside of the protected class were treated more favorably.[4]

Next, Plaintiff must show that Defendants' legitimate reasons for terminating him were a pretext for discrimination. Pretext means a lie or phony excuse. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). A plaintiff can establish pretext with evidence that the employer's explanation is not credible. *Atanus*, 520 F.3d at 674. The focus of this inquiry is whether the employer's stated reason was honest, not whether it was accurate or wise. *Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1224 (N.D. Ill. 2005).

---

[3] In support of its Motion for Summary Judgment, Defendant does not argue that it used the videotape to distinguish between Plaintiff's and Mr. Junkens' conduct.

[4] Defendant argues that Plaintiff has failed to offer an explanation why Mr. Junkens failed to cut the required number of slabs and "the Court cannot simply assume that Mr. Junkens failed to cut the slabs without some justification." Def.'s Reply Br. at 8. However, it is the moving party's burden of production to show that there was no need for disciplinary action, which would eliminate the presumption of discrimination and require Plaintiff to prove pretext. *Curry*, 270 F.3d at 479. Defendant does not provide a justification for Mr. Junkens' failure to meet the production requirement and fails to show a reason to distinguish between Plaintiff's and Mr. Junkens' conduct.

Plaintiff argues that Defendant's stated reason (Plaintiff's failure to perform his work) is pretextual as Defendant's disparate treatment of Plaintiff raises the inference of pretext and Defendant failed to follow its own internal procedures.

Plaintiff argues that Defendant's inconsistent application of its disciplinary policy creates a genuine issue of material fact regarding whether its allegedly nondiscriminatory reason for terminating Plaintiff is pretextual. As already noted in this Opinion and Order, despite engaging in the same conduct and having a similar prior background of failing to perform work, Plaintiff was terminated for his failure to meet the twelve slab production requirement while Mr. Junkens was not. "A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001); *Dossiea v. Bd. of Educ. of City of Chicago*, No. 07 C 1124, 2008 WL 4133418, at *6 (N.D. Ill. Aug. 22, 2008) (showing that a similarly situated individual was treated better can serve as a basis for pretext). Accordingly, a genuine issue of material fact exists as to whether Defendant's proffered reason for terminating Plaintiff was pretextual.

Plaintiff also argues that Defendant failed to follow its own internal procedures and this supports a showing of pretext. An employer's failure to follow its own internal employment procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005). Plaintiff argues that Defendant failed to follow its internal procedures regarding the 9B Hearing as Ms. Balakir allegedly decided prior to the hearing that Plaintiff would be terminated and Defendant failed to hold a second meeting discussing whether Plaintiff should be

terminated. However, the evidence that Plaintiff identifies (Mr. Pavlik's deposition testimony) does not support these allegations. "A lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts *nor district courts* are 'obliged in our adversary system to scour the record looking for factual disputes . . . .'" *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)) (emphasis added).

Plaintiff also alleges that Defendant failed to investigate the reasons for his delay in meeting the production requirement as a mitigating factor. At his deposition, Mr. Dudek testified that no discipline may be given where there is a delay that makes it impossible to complete the work. However, Plaintiff has failed to provide evidence that this is a rule that Defendant implemented, rather than subject to discretion. Nonetheless, for the foregoing reasons, the Court finds that Plaintiff has raised a genuine issue of material fact regarding whether Defendant's provided reason for Plaintiff's termination is pretextual.

Accordingly, the Court finds that genuine issues of material fact exist as to Plaintiff's race discrimination claim and summary judgment must be denied as to the merits of this claim.

*2. Plaintiff's Retaliation Claims*

Next, while Plaintiff argues that Defendant retaliated against him for filing grievances of alleged discrimination, Defendant argues that Plaintiff fails to establish a prima facie case of retaliation. A plaintiff may establish a prima facie case of retaliation by proceeding under either the direct or indirect method of proof. *Derosena v. General Bd. of Pensions & Health Benefits of United Methodist Church, Inc.*, 560 F. Supp. 2d 652, 669 (N.D. Ill. 2008). "To establish retaliation under the direct method of proof, the plaintiff must establish that: (1) [he] engaged in a protected

activity; (2) [he] suffered an adverse employment action subsequent to this protected activity; and (3) a causal connection between the two." *Id.* In the absence of direct evidence (or, evidence that establishes the proposition without resort to inferences from circumstantial evidence), a plaintiff can succeed under the direct method by presenting sufficient circumstantial evidence such that a jury could infer retaliation. *Id.* Circumstantial evidence can include suspicious timing, ambiguous statements, differing treatment of similarly situated employees, personal animus, pretext and other evidence which allows the jury to reasonably infer retaliation. *Id.*

Here, Plaintiff argues that he engaged in protected activity by filing his December 22, 2005 and February 15, 2006 grievances. Defendant argues that Plaintiff did not engage in protected activity because the December 22, 2005 grievance was frivolous. Filing an internal complaint constitutes a statutorily protected activity as long as it involves opposition to a forbidden practice. *Woods v. Illinois Dept. of Transp.*, No. 03-CV-4098-JPG, 2005 WL 1691107, at *4 (S.D. Ill. May 31, 2005). Plaintiff's December 22, 2005 grievance, complaining about alleged race discrimination and retaliation was protected activity. While Defendant claims that the grievance is not protected activity because it is allegedly frivolous, "[t]o show protected activity, [Plaintiff] is not required to prove that [Defendant's] conduct actually violated Title VII or § 1981. It is sufficient if he had a reasonable and good faith belief that [Defendant's] conduct violated the law." *Henderson v. OS Restaurant Service, Inc.*, No. 1:06-cv-0896-DFH-TAB, 2008 WL 216581, at *10 (S.D. Ind. Jan. 24, 2008). The December 22, 2005 grievance alleges that Mr. Heminger was harassing him, discriminating against him, creating a hostile work environment, making threats to fire him or remove him from breaking in on the stocker shipper position and not permitting him the right to bump younger employees to move to a scarfer position, all of which he claimed to be racially

motivated.  Further, in the grievance, Plaintiff cites to the non-discrimination provision of the BLA. The grievance indicates that Plaintiff has a reasonable and good faith belief that Defendant's conduct (race discrimination) violated the law.  Accordingly, the Court concludes that Plaintiff's filing of the December 22, 2005 grievance constitutes protected activity.

However, the Court cannot conclude that Plaintiff's filing of the February 15, 2006 grievance was protected activity as, unlike in the December 22, 2005 grievance, Plaintiff generally alleges discrimination but does not provide a basis for the discrimination (e.g. race), and does not cite to the BLA's anti-discrimination provision.  Therefore, the Court cannot conclude that the February 15, 2006 grievance complains of discrimination prohibited by law. *See Hamner v. St. Vincent Hosp. and Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (providing that a plaintiff's belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by law).

Plaintiff relies on suspicious timing and Defendant's "sudden" dissatisfaction with Plaintiff's conduct as bases for showing a causal link between the protected conduct and his termination. Contrary to Plaintiff's argument that Defendant suddenly became dissatisfied with his work performance, the evidence supports that Defendant had previously expressed dissatisfaction with Plaintiff's conduct in failing to perform his work as he was previously disciplined–in October 2005–for failure to perform his work.  Further, the timing between the December 22, 2005 grievance and Plaintiff's termination, totaling approximately six months, is too attenuated to support a causal link in this case. *See E.E.O.C. v. C.G. Schmidt, Inc.*, 670 F. Supp. 2d 858, 867 (E.D. Wis. 2009) (providing that "a time period of a few months separating the protected activity and the adverse action is insufficient to establish a causal link for a claim of retaliation"); *Alexander v. Cit*

*Technology Financing Services, Inc.*, 217 F. Supp. 2d 867, 892 (N.D. Ill. 2002) (finding that five months was not sufficient to establish a causal link). Therefore, Plaintiff has failed to establish a retaliation claim under the direct method.

Nonetheless, Plaintiff may proceed under the indirect method and must show that (1) he engaged in a statutorily protected activity, (2) he met his employer's legitimate expectations, (3) he suffered a materially adverse employment action, and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Benitez v. American Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 761 (N.D. Ill. 2010). If the plaintiff establishes a prima facie case of retaliation, then the burden shifts to the defendant to articulate a nondiscriminatory reason for its action. *Id.* at 761-62. If defendant meets its burden, then the plaintiff must show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual to avoid summary judgment. *Id.* at 762.

The analysis of whether Plaintiff met Defendant's legitimate expectations dovetails into the pretext analysis as Plaintiff alleges disparate treatment. *Ramos v. Sampco of Indiana, Inc.*, No. 3:06-CV-326 RM, 2007 WL 2819620, at *8 (N.D. Ind. Sept. 25, 2007). As discussed in relation to Plaintiff's race discrimination claim, the evidence in this case supports that Mr. Junkens was a similarly situated employee. The evidence supports that, unlike Plaintiff, Mr. Junkens did not file a grievance regarding discrimination and Defendant has failed to argue or provide evidence indicating that Mr. Junkens engaged in protected activity. Yet, unlike Plaintiff, Mr. Junkens was not terminated. Accordingly, for the same reasons discussed in relation to Plaintiff's race discrimination claim, the Court finds that a genuine issue of material fact exists as to whether Plaintiff was treated less favorably than a similarly situated employee who did not engage in

statutorily protected activity (Mr. Junkens). Further, for the same reasons discussed in this Opinion and Order addressing the race discrimination claim, the Court finds a genuine issue of material fact exists as to whether Defendant's proffered reason for Plaintiff's termination was a pretext for discrimination.[5]

Accordingly, the Court denies summary judgment as to the merits of Plaintiff's § 1981 retaliation claim.

## CONCLUSION

Accordingly, based on the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Motion for Summary Judgment of United States Steel Corporation [DE 28]. The Court **GRANTS** the motion as to Plaintiff's Title VII claims. The Court **DENIES** the motion as to Plaintiff's § 1981 race discrimination and retaliation claims.

SO ORDERED this 31st day of August, 2010.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT


cc:     All counsel of record

---

[5] Defendant argues that the time lapse between Plaintiff's grievances and termination denies causation. However, no causal link needs to be made under the indirect method. *See Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005) (clarifying that no causal link is necessary under the indirect method).